FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 SEP 25 PH 1:04

U.S. DISTRICT COURT
N.D. OF ALABAMA

NATIONWIDE MUTUAL FIRE          )
INSURANCE COMPANY, et al.,      )
                                )
      Plaintiffs,               )        CIVIL ACTION NO.
                                )
v.                              )        00-AR-1662-S
                                )
JOHN H. ALLEN, et al.,          )
                                )
      Defendants.               )

ENTERED
SEP 25 2001

## MEMORANDUM OPINION

This declaratory judgment action was filed on June 16, 2000.
In it, plaintiffs, Nationwide Mutual Fire Insurance Company
("Nationwide Fire") and Nationwide Mutual Insurance Company
("Nationwide Mutual"), seek a declaration that they have no duty to
defend or to indemnify their insured, defendant, John H. Allen
("Allen"), in two actions pending against him in the Circuit Court
of Jefferson County, Alabama. The first underlying action, *Hayes
v. Allen,* CV-0001329, was filed by defendant, Walter Michael Hayes
("Hayes"), on March 6, 2000. The other is *Wallace v. Allen*, CV-
0003631. It was filed by defendant, Martha C. Wallace ("Wallace"),
on June 14, 2000. Before the court are plaintiffs' joint motion for
summary judgment and plaintiffs' motion to strike the affidavit
filed here by Allen, who is *pro se*, in defense of plaintiffs' Rule
56 motion. For the reasons hereinafter recited, plaintiffs' motion,
insofar as it seeks relief from any obligation to defend Allen, will
be denied. Plaintiffs' motion, insofar as it seeks a declaration

that plaintiffs have no duty to indemnify Allen against any judgments obtained in the state court actions brought by Hayes and Wallace, will also be denied, but without prejudice to its being renewed if the outcomes of the state court cases create that opportunity.  Consideration of any and all other issues presented in this case will be stayed pending a resolution of the state court cases.

### Procedural History and Pertinent Facts

The original counts in the underlying complaint by Hayes are based on a series of letters that were written by Allen and sent by him to various persons and organizations.  Hayes contends that the letters libeled him, intentionally inflicted emotional distress upon him (and thereby committed the tort of outrage), interfered with his contract of employment, and invaded his privacy.  Like Hayes, Wallace, in her original underlying complaint, seeks relief for libel, intentional infliction of emotional distress, interference with contractual relations, and invasion of privacy.  Her causes of action arose out of one of the letters described by Hayes in his complaint as well as out of a purported retraction penned and published by Allen.

Upon learning of the actions against him, Allen called upon his insurance carriers, Nationwide Fire and Nationwide Mutual, to provide a defense and to indemnify him against any judgments that Hayes and Wallace might obtain.  Nationwide Fire had issued to Allen

2

a Homeowners Policy.   That policy states in Section II, under "Coverage E - Personal Liability":

> We will pay damages the insured is legally obligated to pay due to an occurrence.
>
> We will provide a defense at our expense by counsel of our choice.  We may investigate and settle any claim or suit.  Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

By amendment, the policy defines an "occurrence" as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition."  "Accident" is not defined in the policy.  Also by amendment, the policy excludes from its "Coverage E" any bodily injury or property damage "caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from an insured's conduct."

Nationwide Mutual provided further insurance for Allen under a Personal Umbrella Policy.  In pertinent part, that policy provides under its "Claims Defense" section:

> a)   We will defend a suit against an insured resulting from an occurrence covered by this policy.  This applies even if the suit is groundless.  However, we will not defend the insured:
>
> 1.   if the occurrence is covered by the Required Underlying Insurance or other insurance the insured has, unless such coverage is exhausted by payments...
>
> ....
>
> b)   We may investigate and settle any claim or suit.

3

> Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

The umbrella policy defines "occurrence," in part, as "an accident." By exclusion, coverage under the Claims Defense section does not apply to "**bodily injury** or **property damage** intended or expected by the insured" or to:

> **personal injury** arising out of:
>
> a)   willful violation of a law by or with the consent of the insured [or]
>
> ....
>
> c)   libel, slander, defamation or violation of rights of privacy if:
>
> > (1)  made by or with the consent of the **insured**; and
> >
> > (2)  made with knowledge of their falsity
>
> ....

(emphasis in original).

The parties have not filed in support of or in opposition to the Rule 56 motion the so-called "reservation of rights" letter by which either insurer tendered a defense in either of the underlying actions, but Allen mailed to the Clerk, albeit erroneously, a copy of the "reservation of rights" letter sent to him and dated May 18, 2000, in regard to the *Hayes* case. The said letter was part of Allen's initial disclosures made pursuant to Rule 26. Because Allen is *pro se*, and because this letter is relevant, it is attached hereto and incorporated herein as Exhibit "A" to this opinion. The

4

court does not know whether a similar letter was sent in regard to the *Wallace* case, but this court's conclusions as to both the *Hayes* case and the *Wallace* case would be the same, whether or not such a letter was sent after the *Wallace* complaint was filed.   In any event, pursuant to the "reservation of rights" contained by the insurance contracts themselves, plaintiffs have to this date provided a defense for Allen in both state court cases.  The lawyers whom Nationwide Fire and Nationwide Mutual selected and furnished to Allen to defend the state court actions are not the same lawyers who represent the insurance companies in this case.  The court has not the slightest reason to believe that the lawyers chosen to represent Allen in the state court cases are not dutifully and competently discharging their professional responsibilities to Allen.  For aught appearing, the two tort cases are moving toward trial in the ordinary course, with discovery proceeding according to schedule and the other routine trial preparation taking place.

Both Hayes and Wallace have amended their state court complaints.  On February 12, 2001, Wallace added a count, which states, in part:

> Plaintiff avers that Defendant committed the actions
> complained of in her complaint, specifically in Counts
> One through Four, by negligent [sic] and/or wantonly
> and/or recklessly doing or taking said actions which
> caused damage to her.  These allegations are brought in
> the alternative, being asserted along with the allegation
> of intentional action by the Defendant in bringing about
> the damage to Plaintiff.

On March 22, 2001, Hayes added two counts.  In both of his new counts Hayes references the paragraphs in his original complaint that contain factual allegations regarding the contents and distribution of the letters at issue.  He now alleges that "defendant negligently wrote the above described letters" and that Allen's "negligence" was the proximate cause of the damages suffered by Hayes.  Hayes alternatively alleges that the letters were written "willfully and wantonly" and that his damages are the proximate consequence of Allen's "willfulness" and "wantonness."  The amendments by Hayes and Wallace may or may not have been proximately caused by the insurers' initial denial of coverage.

In deposition, Allen testified that at the time he wrote the letters, he intended the letters to be read, that he believed the contents of the letters, and that he was angry.  He further stated that at the time he wrote the letters he was upset over the termination of his relationship with Janet Hayes, who was the wife of Hayes.  In addition to stating such in his deposition, Allen represents in his challenged affidavit that he believed the contents of the letters to be true when he wrote them.  This representation is contradicted in whole or in part by the deposition testimony of Janet Hayes.

Allen is a sophisticated insurance man.  He has been an expert witness on matters of insurance coverage.  He knows more than the average lawyer about declaratory judgment actions regarding

insurance coverage.

## Conclusions of Law

This court starts its analysis by making it clear that the court is not relying upon Allen as an expert on the coverage questions here being presented, despite Allen's experience on the subject, and the court is not using Allen's affidavit in order to reach the conclusions herein reached--that is except to the extent the affidavit simply reiterates otherwise uncontradicted facts. The court does not need an expert on liability insurance practice and procedure in Alabama, except the expertise of the appellate courts of Alabama.

This court, sitting in diversity, knows that in Alabama the duty of an insurer to defend is broader than the duty to indemnify. *Ladner & Co. v. Southern Guaranty Ins. Co.*, 347 So. 2d 100 (Ala. 1977). Nationwide Fire and Nationwide Mutual recognized this principle when they provided the defense initially, even with a somewhat effusive reservation of rights. When the "reservation of rights" letter of May 18, 2000, stated that **"there are questions as to whether the claims made by the plaintiff [Hayes] are covered** under the above-cited provisions of your policies," and that **"because of these coverage questions,** Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company will pay those reasonable and necessary fees and expenses necessarily

7

incurred in the defense of the case from the date that the claim was made... and will provide a defense to you..." (emphasis supplied), the insurers were, in effect, admitting that the coverage questions are not "open-and-shut" questions, that the questions remain to be resolved, and thus, that the tendering of a defense is required.

A liability insurance company's duty to defend is, of course, determined primarily from two sources: (1) the language of the policy itself, and (2) the allegations of the complaint that give rise to a cause of action. *See American States Ins. Co. v. Cooper*, 518 So. 2d 708, 709 (Ala. 1987).  If the injured party bases his complaint on allegations of fact that facially trigger coverage, the insurer has the duty to defend, regardless of the ultimate liability of the insured.  *See Acceptance Ins. Co. v. Brown*, Nos. 1991938, 1992026, 2001 WL 729283, at *8 (Ala. June 29, 2001) (citations omitted).

However, despite the primacy of the complaint, the facts alleged will not always be the final determinant of the duty to defend.  *See id.* (quoting *Ladner*, 347 So. 2d at 103).  If the complaint alleges only acts that are excluded from coverage under the insured's policy, the insurer may nevertheless be obliged to defend if there is evidence that the injured party is, as a matter of fact, asserting a theory of liability that is not found in the complaint but that does describe conduct that arguably falls within the scope of some coverage offered by the policy.  *See Tapscott v.*

8

*Allstate Ins. Co.*, 526 So. 2d 570, 574-75 (Ala. 1988); *Ladner*, 347 So. 2d at 103-04.  Similarly, if there is uncertainty as to whether the complaint triggers coverage, the question may be resolved by looking to facts which can be proven by admissible evidence.  *See Acceptance Ins. v. Brown*, 2001 WL 729283, at *9.  In looking beyond a complaint to resolve an uncertainty about coverage, the insured's own statements or denials may be considered.  *See, e.g., id.*, at *9-10 (affirming trial court's submission to the jury of insured's duty-to-defend claim on the strength of insured's statements which supported the injured party's alternatively pled theory of negligence).  Therefore, if there is any readily available evidence to support a covered claim, there is a duty to defend.  *See id.*  Furthermore, when a covered claim arises from the same set of facts as a non-covered claim, so that defense of the covered claim cannot be severed from defense of the non-covered claim, the duty to defend extends to the entire action.  *See Auto-Owners Ins. Co. v. American Central Ins. Co.*, 739 So. 2d 1078, 1082 (Ala. 1999); *Universal Underwriters Ins. Co. v. East Central Alabama Ford-Mercury, Inc.*, 574 So. 2d 716, 719 (Ala. 1990); *Universal Underwriters Ins. Co. v. Youngblood*, 549 So. 2d 76, 78 (Ala. 1989).

As a preliminary matter, this court does not see how non-covered claims in this action can be severed from arguably covered claims.  Because this court, as discussed below, finds that the duty of Nationwide Fire and Nationwide Mutual to defend Allen was

triggered by the formal assertion of claims of negligence by Hayes and Wallace, the court will highlight in its discussion of the relevant policy language the issue of whether the policies, as a matter of interpretation, oblige the insurers to defend against allegations of negligence.

The relevant policy language of Nationwide Fire's Homeowners Policy is found in the limitations on coverage for personal liability and in its exclusions from that coverage.  The coverage limitation reads:

> We will pay damages the insured is legally obligated to pay due to an occurrence.
>
> We will provide a defense at our expense by counsel of our choice.  We may investigate and settle any claim or suit.  Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

Consistent with *Ladner* and subsequent Alabama cases, the court interprets this provision as establishing that the duty to defend exists when an "occurrence" is alleged in the complaint or is supported by facts in the record.  This policy defines an "occurrence" as bodily injury resulting from an accident.  Because libel is expressly excluded from coverage, and because libel does not cause physical injury, "bodily injury" must include psychic injury.  Although "accident" is not defined in the policy, the term has been described as something that is unforeseen, unexpected, or unusual from the viewpoint of the insured.  *See Hairston v. Liberty Nat'l Life Ins. Co.*, 584 So. 2d 807, 808 (Ala. 1991); *Hearn v.*

10

*Southern Life & Health Ins. Co.*, 454 So. 2d 932, 934-35 (Ala. 1984). Regarding the relationship of the accepted meaning of "accident" to the concept of negligence, the Supreme Court of Alabama has held that when an insurer contracts to defend its insured against suits based on injuries resulting from an accident, it is agreeing to defend its insured against claims of negligence. *See Youngblood*, 549 So. 2d at 78; *Armstrong*, 479 So. 2d at 1167. Therefore, as a general proposition, claims of negligence fall within the coverage limitation of the Homeowners Policy.

The insurance contract's delineation of the general scope of coverage is not the final word on the obligation to defend Allen. The Homeowners Policy contains a provision that sets forth conditions which, if met, expressly exclude coverage for an insured's personal liability even if the coverage limitation language has been satisfied. This exclusionary provision establishes that Nationwide Fire is not obligated to defend against suits alleging bodily injuries "caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from an insured's conduct." This language provides an argument for excluding a negligence claim if the insured should have anticipated injury to a third person from the insured's act. The parties did not cite, nor could the court locate, an Alabama decision addressing this precise, or virtually similar, phrasing. Simply giving plain

11

meaning to the words makes it clear that the policy excludes defense coverage for an insured's liability if it is based on injuries that were known by the insured to follow from his willful actions or injuries that the insured should have known were to follow from his willful actions. Furthermore, in this context, the term "willful act" means acting with the design or purpose of doing the harm that occurs.[1]  *See Roe v. Lewis*, 416 So. 2d 750, 754 (Ala. 1982); *Sutherland v. Roth*, 407 So. 2d 139, 141 (Ala. Civ. App. 1981) (observing that doing an act willfully "'implies not only the voluntary and intentional doing of an act, but also the intending of the result which follows from the doing of the act.'" (citation omitted)).  With "willful" interpreted in this sense, the provision excludes coverage for liability premised on acts allegedly done 1) with the intention of doing the harm that follows, **and** 2) when the insured knew that the harm would follow, or under such circumstances as he should have known that the harm would follow.[2]  Neither in

---

[1]Any description of "willful act" or "willful conduct" that defines the phrase in terms of the subjective or objective knowledge of the actor, see, for example, *McCauley*, 726 So. 2d at 722 (quoting William L. Prosser, *Law of Torts*, § 34 (3d Ed. 1964)), is unusable here.  The Homeowners Policy exclusionary provision modifies "willful acts" in just those terms: it excludes coverage for willful acts "the result of which the insured knows [i.e., subjective knowledge] or ought to know [i.e., objective knowledge] will follow from the insured's conduct."  Reading into this provision a definition that imbues the word willful, all by itself, with certain connotations regarding an actor's subjective and objective knowledge would necessarily either contradict or render superfluous the words of that provision that modify "willful acts."  Both of these results run counter to general rules of contract interpretation.

[2]This reading accords with at least one other court that has interpreted the same language.  *See Nationwide Mut. Fire Ins. Co. v. Smith*, No. 95C-11-111-WTQ, 1998 WL 433941, at *4 (Del. Super. April 2, 1998) (holding that this language excludes "purposeful acts when the insured knew or ought to have

Alabama nor in any other common law jurisdiction, is it necessary to a claim of negligence that the injured party prove that the actor did the act which proximately caused the injury with the intent of causing that injury. *See Lynn Strickland Sales & Service, Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, , 145-46 (Ala. 1987), *overruled on other grounds by Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1252 (Ala. 1998). Therefore, an insured can be found liable on a count of negligence without meeting the first prong of the standard established by the operative policy language here, and the exclusionary provision of the Homeowners Policy does not extend to allegations of negligence.[3]

In light of the relevant policy language, the court turns to the complaints, original and amended, and, if necessary, beyond them, to determine if the two insurers are obligated to defend Allen and, if so, when that duty arose. On their faces, the original complaints paint a picture of Allen as a person who acted not only with full knowledge of his actions and with full knowledge that injuries would result, but as a person who did those acts with malice. Thus, the original complaints do not suggest, much less expressly aver, that there was anything resembling an "accident,"

---

known the consequences").

[3]This result has been reached by other courts addressing the issue of whether this language excluded negligence claims. *See Cremeans v. Nationwide Mut. Fire Ins. Co.*, No. 841, 2000 WL 1741737, at * 3 (Ohio App. 7 Dist. Nov. 27, 2000); *Augenblick v. Nationwide Ins. Co.*, No. Civ. A. 99-3419, 1999 WL 975118, at * 4 (E.D. Pa. Oct. 8, 1999).

the pre-requisite for coverage under the Homeowners Policy.

However, these complaints were amended.   It is plain that the amendments to the complaints, while adding no factual allegations, assert negligence as an alternative theory of liability.   There is clear precedent in Alabama for the proposition that a bare complaint that contains an alternatively pled theory of liability which falls within the coverage of the policy triggers an insurer's duty to defend.   *See Cooper*, 518 So. 2d at 710.

Nationwide Fire and Nationwide Mutual say that the **real** facts are that all of the causes of action asserted by Hayes and Wallace, including the negligence claims, are excluded from coverage.   They contend that Allen's own deposition inexorably leads to a factual finding that he intended the letters to be read and that he was angry when he wrote them.   The appropriate factfinder may agree with this contention, but the admissible evidence does not foreclose the possibility that Allen acted **negligently** in writing the letters. Hayes and Wallace may very well have a better claim of intentional, malicious misconduct than of negligence, but it is more than theoretically possible that a jury will find that Allen was delusional and that what he did was occasioned by a negligent failure to check his facts, and/or that he got negligently carried away, and/or that he negligently expanded upon facts he had reason to believe were true.   This court is not called upon to be the ultimate factfinder.   The possibility that Allen could be found

14

liable on a claim covered by the policy still exists.  Rule 56 comes into play only when the dispositive facts are not in dispute.  Here, they are in dispute, and this court does not engage in credibility assessments.

Not only is there ample reason for the insurers to have undertaken to defend their insured based on the serious possibility of coverage, but undertaking the defense under the circumstances of this case requires the insurers to continue their defense and does not permit them to withdraw while the underlying cases are proceeding toward trial.  If this court had not already expressed sufficient reasons to deny the insurers the right to withdraw their defense, the court would deny a withdrawal here because a withdrawal at this juncture would prejudice the insured.  This court agrees with the judge in *Employers Reinsurance Corp. v. Martin, Gordon & Jones, Inc.*, 767 F. Supp. 1355, 1363 (S.D. Miss. 1991), that an "insurer who has undertaken to defend a case for its insured may withdraw from the litigation **only if it can do so without prejudicing its insured**" (emphasis supplied).  It is impossible for this court to believe that Allen would not be prejudiced by the withdrawal of his defense team.  Relying on the defense provided by his insurers, Allen did not obtain independent counsel, although this court is, by what it is about to say, giving Allen the free legal advice to obtain his own counsel for the avowed purpose of looking exclusively after his interest, which is distinct from the

15

interest of his insurers who selected and are paying Allen's counsel in the underlying cases--counsel that have the inevitable conflict-of-interest that inheres in being employed by one party to represent another when the payor and the recipient of the services have differing interests. By providing this free legal advice, this court does not intend to impugn the integrity of Allen's counsel who were chosen by his insurers. The court is simply stating a fact that someone with Allen's experience knows or should know.

This court will not grant Nationwide Fire's and Nationwide Mutual's motion for summary judgment regarding coverage using the same rationale employed by the court in denying the right to withdraw, although the two issues are distinct. Where, as here, there are disputes of material fact on the coverage questions, those disputes must be resolved by the juries in the underlying cases. The court trusts that the trial courts in which the *Hayes* and *Wallace* cases are pending are not waiting for this court to put the cart before the horse. The Supreme Court of Alabama in *Mutual Assurance, Inc. v. Chancey*, 781 So. 2d 172, 175 (Ala. 2000), correctly held that "a declaratory-judgment action is an insufficient alternative in cases where the question of coverage is dependent upon the factual basis of a jury's verdict."

The case management of a case is the responsibility, as well as the prerogative, of the trial court to whom the case is assigned, whether state or federal. What if an underlying tort case, over

16

which there is a coverage dispute, instead of being brought in a state court, is brought in a federal court and a subsequent declaratory judgment action is brought in a state court by the insurer seeking to escape from any defense obligation to its insured?  Will the federal court appreciate the state court's purporting to grant leave of insurance counsel chosen for the insured to withdraw from defending the federal tort claim?  Speaking for this federal court, the answer is "no."  It would be presumptuous of both a state and a federal court to interfere with the trial preparation underway in the other court under circumstances like these.  Both courts are courts of competent jurisdiction, and each should defer to the other on the question of the right to withdraw a defense once undertaken.

An almost perfect representation of this court's reaction to procedural circumstances like these is found in *Northern Insurance Company of New York v. Addison Products, Inc.*, 148 F. Supp. 2d 859 (E.D. Mich. 2001), decided as recently as June 15, 2001.  Although the entire opinion is worthy of a careful reading, the words most pregnant with meaning for this case are these:

> When an insurance carrier seeks a declaratory judgment in federal court about defense and coverage issues after its insured has been sued for alleged tort liability in state court, the district court must consider the following factors to assess the propriety of exercising its discretionary jurisdiction over the declaratory action:
>
> > (1) whether the judgment would settle the controversy;
> > (2) whether the declaratory judgment action

would serve a useful purpose in clarifying the
legal relations at issue;
(3) whether the declaratory remedy is being
used merely for the purpose of "procedural
fencing" or "to provide an arena for a race for
res judicata;"
(4) whether the use of a declaratory action
would increase the friction between our federal
and state courts and improperly encroach on
state jurisdiction; and
(5) whether there is an alternative remedy that
is better or more effective.

*Scottsdale Insurance Co. v. Roumph*, 211 F.3d 964, 968 (6th
Cir. 2000), and cases cited therein.

Id. at 861.

* * *

**A declaratory action serves little or no useful purpose
here because some insurance coverage questions can be
resolved meaningfully only in light of facts to be
determined in the state courts.** *See Allstate Insurance
Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990).
Furthermore, Defendants are correct that a declaratory
action would have to be useful in clearing up the legal
issues in the state court case, not the instant case, in
order to satisfy the "useful purpose" factor. *See Grand
Trunk*, 746 F.2d at 326. **A declaratory action here would
not speak to the legal issues in the underlying state
cases.** Therefore, this Court concludes that these
factors weigh in favor of granting Defendants' motion.

Id. at 862.  (emphasis supplied).

With the help of the trial courts and counsel at the trials of

the *Hayes* and *Wallace* cases, special interrogatories can be

fashioned by which the juries in those cases can establish the basis

or bases for liability, if any, by Allen to Hayes and/or to Wallace;

the coverage questions can then be decided based on the findings

made by factfinders who are designed by the Seventh Amendment for

18

fact finding.  Of course, if the juries find that Allen is not liable to Hayes and/or to Wallace on any basis whatsoever and judgment is entered for Allen, the coverage questions become moot.

This solution is not only appropriate in light of what the Supreme Court said in *Chancey*, and what the District Court of the Eastern District of Michigan said in *Northern Insurance*, but it accommodates the obligation of this court to defer to the forum first chosen by any litigant who is interested in a resolution of this controversy.

A separate appropriate order will be entered.

DONE this _25th_ day of September, 2001.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

19



**NATIONWIDE
INSURANCE
ENTERPRISE**
Nationwide is on your side

4100 Colonnade Parkway * Suite 150 * Birmingham, AL  35243-2352

May 18, 2000

via fasimilie, U S mail and certified mail

John H Allen
5721 5th Court South
Birmingham, AL  35203

**OUR INSURED :** John H Allen
**OUR CLAIM NUMBER :** 77 01 HO 349217 01012000 01
**DATE OF ACCIDENT :** 01-01-2000

Dear Mr Allen:

RESERVATION OF RIGHTS LETTER

We acknowledge receipt of the notice of claim on behalf of yourself.  This is a letter of
"RESERVATION OF RIGHTS in connection with the claim number and policies referred to
above.  It is contended that Nationwide Mutual Fire Insurance Company issued a policy of
homeowner's insurance to you, that Nationwide Mutual Insurance Company issued a personal
umbrella insurance policy to you, and that both are applicable to the claims made in the suit
styled Walter Michael Hayes v. John H. Allen, CV00-1329, pending in the Circuit Court of
Jefferson County, Alabama.

Nationwide Mutual Fire Insurance Company issued a homeowner's policy numbered 77-
01-HO-349217 with John H. Allen as the named insured with a policy period of June 25, 1999 to
June 25, 2000.  Nationwide Mutual Insurance Company issued a personal umbrella insurance
policy numbered 77-01-PU-717801 which named John H. Allen as the named insured and had a
policy period of June 17, 1999 to June 17, 2000.

As stated above, the claims against you by Walter Michael Hayes are made in a
Complaint filed in the Circuit Court of Jefferson County, Alabama, styled ·Walter Michael Hayes
v. John H. Allen, CV00-1329.  That complaint contains seven (7) counts, all of which make
allegations against you.

Count I alleges that you libeled Mr. Hayes in a February 11, 2000 letter which you wrote to
Mr. William Dawson and copied to others.

EXHIBIT "A"

0130 - 000703-01



Count II makes different allegations of libel, again related to that February 11, 2000 letter.

Count III alleges that you libeled Mr. Hayes in a February 10, 2000 letter to Ms. Louise White.

Count IV alleges that you committed the tort of intentional infliction of emotional distress with a February 8, 2000 which you wrote to Mr. Hayes.

Count V alleges that you invaded Mr. Hayes' privacy when you sent a copy of the February 8, 2000 letter to Ms. Louise White.

Count VI alleges that you intentionally interfered with a contract between Mr. Hayes and The Berry Company by writing a letter dated January 31, 2000 to that company.

Count VII alleges that you committed outrage and intentional infliction of emotional distress in a February 17, 2000 letter to Mr. Hayes' wife.

Count VIII alleges Intentional Infliction of Emotional Distress against you.

Count IX alleges Invasion of Privacy against you.

Count X alleges the tort of Outrage against you.

This letter is being sent to you to give you written notice that Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company may have the right to raise certain defenses to your claims for coverage under the policies of insurance referred to in this letter. The defenses which Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company may have include, but may not be limited to, the following.


The Homeowner's Policy

Coverage E -- Personal Liability found in Section II -- Liability Coverages, provides that

"We will pay damages the insured is legally obligated to pay due to an occurrence. We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability."



Amendatory Endorsement number 3191, deleted the original definition of "occurrence" and substituted this definition:

"Occurrence means bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition. The occurrence must be during the policy period."

The terms "bodily injury" and "property damage" are defined in your policy. Under the DEFINITIONS section, "bodily injury" is defined as "bodily harm, sickness, or disease, including resulting care, loss of services and death." "Property damage" is defined as "physical injury to or destruction of tangible property".

In connection with determining whether there is coverage for these claims under the homeowner's policy, in particular, whether the complaint alleges "bodily injury", it is important to note that you did not purchase "Option M. Personal Injury Coverage which amends the definition of bodily injury to include personal injury. "Option M" further provides that

"Personal Injury" means injury as a result of
(1)   false arrest, false imprisonment, wrongful eviction, or wrongful entry;
(2)   wrongful detention, malicious prosecution, misrepresentation, or humiliation;
(3)   libel, slander, defamation of character; or
(4)   invasion of rights of privacy.

There are exclusions to the coverage afforded under SECTION E. These are found in SECTION II -- EXCLUSIONS. Paragraph 1 of that section provides as follows:

"1.   Coverage E -- Personal Liability, and Coverage F -- Medical Payments to Others do not apply to bodily injury or property damage:

a.   caused intentionally by or at direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct.

This exclusion does not apply to corporal punishment of pupils."1


The Personal Umbrella Policy

The COVERAGES section of this policy provides as follows:

"EXCESS LIABILITY INSURANCE

We will pay for damages an insured is legally obligated to pay in excess of:

a)   the retained limit; plus



b)      any other liability insurance available to an insured which applies to an occurrence.

The damages must be due to an occurrence.  The bodily injury or property damage must occur during this policy's term.  The personal injury must be due to an offense committed during this policy's term."

    The personal umbrella policy contains the following DEFINITIONS:

"5.      Occurrence(s) means an accident or continuous or repeated exposure to the same general conditions.  It must result in bodily injury, property damage, or personal injury caused by an insured.

6.      Bodily Injury means bodily harm, including resulting sickness, disease, or death.

7.      Property Damage means physical injury to or destruction of tangible property.  It includes resulting loss of its use.

8.      Personal injury means:

a)      false arrest, false imprisonment, wrongful eviction, wrongful entry;

b)      wrongful detention, malicious prosecution, misrepresentation, or humiliation;

c)      libel, slander, defamation of character, or invasion of rights of privacy.

* * *

11.      Retained limit means the greater of:

a)      the total amount of the limit of liability of the Required Underlying Insurance; or

b)      · if the occurrence is not covered by the Required Underlying Insurance but is covered by this policy, a deductible amount shown on this policy's Declarations."

    The Umbrella insurance policy contains exclusions to its coverage found in the section entitled EXCLUSIONS.  The following provisions are found in that section:
"Excess liability and additional coverages do not apply to:

1.      bodily injury or property damage intended or expected by the insured.  This does not apply to bodily injury or property damage caused by an insured trying to protect person or property.

* * *

9.      personal injury arising out of:



a)      willful violation of a law or with the consent of the insured.

b)      the insured's activities in advertising or broadcasting.

c)      libel, slander, defamation, or violation of rights of privacy if:

(1)     made by or with the consent of the insured; and

(2)     made with knowledge of their falsity; or

(3)     the injurious activities began before this policy's effective date.

There are questions as to whether the claims made by the plaintiff are covered under the above cited provisions of your policies. Under the homeowner's policy, these questions include whether plaintiff has alleged damages due to an occurrence and whether the plaintiff has alleged bodily injury resulting from an accident. Under the personal umbrella policy, these questions include whether the plaintiff has alleged damages due to an occurrence and whether the plaintiff has alleged bodily injury, property damage, or personal injury resulting from an occurrence.

If there is coverage under the homeowner's policy, there are further questions as to whether the claims are excluded under the exclusions cited above. These questions include whether the claims are excluded as bodily injury or property damage caused intentionally by or at the direction of an insured.

Similarly, if there is coverage under the personal umbrella policy, there are further questions as to whether the claims are excluded under the exclusions cited above. These questions include whether the claims are excluded as bodily injury or property damage expected or intended by the insured; whether the claims are excluded as "personal injury arising out of (a) willful violation of a law or with the consent of the insured or . . . (c) libel, slander, defamation, or violation of rights of privacy if (1) made by or with the consent of the insured; and (2) made with knowledge of their falsity; or (3) the injurious activities began before this policy's effective date".

Because of these coverage questions, Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company will pay those reasonable and necessary fees and expenses necessarily incurred in the defense of the case from the date that the claim was made to Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company. Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company will provide a defense to you, under a full reservation of rights to deny coverage for the reasons stated herein and for such other reasons as developments or later revealed facts may disclose.

No act or omission of any agent, servant, or employee of any law firm shall be deemed to constitute a waiver with respect to our rights under the applicable policy. Undertaking to defend you is strictly limited to the claims asserted in the suit referred to above.  Entering an appearance on your behalf is done under complete reservation of Nationwide Mutual Fire Insurance



Company's and Nationwide Mutual Insurance Company's right to deny coverage at any time and withdraw the defense which they are providing.

Please be advised that this reservation of rights is based upon the above quoted policy language. However, we do not waive our rights to disclaim coverage on any other basis stated in this letter should it be determined that your alleged actions do not fall within the previously cited terms and conditions of this policy.

If you have any questions about this reservation of rights, please contact me.

Sincerely,

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
LARRY CAINE
Claims Department
(205)969-6353

cc: Greg Canfield

0130 - 000703-01